IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL LABAR, individually and as    :
Administrator of the Estate of       :
JOLENE LABAR                         :
Plaintiffs                           :     Civil Case
                                     :
             v.                      :
                                     :
OFFICER JAMES T. ALERCIA, et al.     :     No. 09-4182
Defendants                           :

OPINION

**Stengel, J.**                                   **September 30, 2010**

A car driven by Kevin Messinger struck a car driven by Daniel LaBar's wife,

Jolene LaBar. Mrs. LaBar died at the scene. Mr. Messinger was being pursued by police

officers from Palmer Township and Wilson Borough, who suspected Mr. Messinger of

stealing a vacuum cleaner. Mr. Messinger, and the police cars chasing him, were

traveling the wrong way on United States Route 22.

Mr. LaBar has filed twelve counts alleging federal constitutional violations, state

constitutional violations, and state law causes of action against various municipal

authorities from both Palmer Township and Wilson Township, the police departments and

officials, and the police officers involved in the chase.

On December 4, 2009, Palmer Township, David Colver, Robert A. Lammi, K.

Michael Mitchell, Ann-Marie Panella, Robert E. Smith, Bruce Fretz, James T. Alercia,

Keith Border, Thomas Vogal, and Steven Steckel filed a partial motion to dismiss.[1]  On

May 7, 2010, the Borough of Wilson, Chief Richard Nace, Mayor David Purusso, Karen

Lohrman, Officer Michael Potope, and John Does 1-10 filed a partial motion to dismiss.[2]

On August 27, 2010, oral argument on the motions to dismiss was heard.[3]  For the reasons

set forth below, I will grant the motions to dismiss.


## I.      BACKGROUND

        Daniel LaBar's pregnant wife, Jolene LaBar, was traveling home from work

eastbound on United States Route 22.[4]  At the same time, three police cars driven by

Officer James T. Alercia, Officer Keith Borden, and Officer Thomas Vogel were in

pursuit of Keven Messinger, who they suspected of stealing a vacuum cleaner.  See

Complaint at ¶¶ 24, 27, 29.  Mr. Messinger merged onto the eastbound lanes of Route 22.

Id. at ¶ 24.  Mr. Messinger, however,  was driving in the wrong direction.  Id.  The police

---

[1]  Palmer Township, Mr. Colver, Mr. Lammi, Mr. Mitchell, Ms. Panella, Mr. Smith, Mr.
Frezt, Officer Alercia, Officer Border, Officer Vogal, and Officer Steckel collectively will be
referred to as the Palmer defendants.

[2]  The Borough of Wilson, Chief Richard Nace, Mayor David Purusso, Karen Lohrman,
Officer Michael Potope, and John Does 1-10 collectively will be referred to as the Wilson
defendants.

[3]  At oral argument, defendants argued additional facts not in the complaint.  These facts
will not be considered at this stage.  See Fed. R. Civ. P. 12(d) ("If, on a motion under 12(b)(6) or
12(c), matters outside the pleadings are presented to and not exclude by the court, the motion
must be treated as one for summary judgment under Rule 46.  All parties must be given a
reasonable opportunity to present all the material that is pertinent to the motion.")

[4]  Complaint at ¶ 22, LaBar v. Alercia, No. 09-4182 (E.D. Pa. filed Sept. 15, 2009).

cars followed Mr. Messinger onto the eastbound lanes of Route 22, also driving in the wrong direction. Id. at ¶ 28. During the police chase, Mr. Messinger attempted to exit Route 22. Id. at ¶ 56. Officers from both Palmer Township and Wilson Borough, however, blocked the exit. Id. Officer Michael Potope of Wilson Borough and another unidentified Wilson Borough police officer chased Mr. Messinger back onto Route 22. Id. at ¶ 58. Mr. Messinger continued his flight in the wrong direction on Route 22. Id. at ¶ 59. The chase ended when Mr. Messinger's car struck Mrs. LaBar's car. See Complaint at ¶ 59. Mrs. LaBar died from the injuries she sustained. Id. at ¶ 62.

Mr. LaBar alleges both Palmer and Wilson Police departments had a policy or practice of "Emergency Response Driving – High Speed Motor Vehicle Pursuit." See Complaint at ¶ 64. This policy or practice addressed when officers may engage in high speed pursuit chases and required an evaluation of whether the value of the apprehension of a suspect outweighs the level of danger created by the pursuit. Id. at ¶ 65. In addition, he alleges the police officers were not adequately trained with respect to high speed chases. Id. at ¶ 69.

Mr. LaBar raises twelve counts alleging: (1) a section 1983 claim against all defendants; (2) a section 1983 claim against all defendants based on the Fourth Amendment and on the Fourteenth Amendment; (3) a section 1983 claim based on supervisory liability against the individual defendants; (4) a section 1983 claim based on municipal liability against the Township of Palmer; (5) a section 1983 claim based on

municipal liability against the Borough of Wilson; (6) state constitutional claims against all defendants; (7) an assault and battery claim against defendants Officer Alercia, Officer Border, Officer Vogel, Officer Potope, and John Does 1-10; (8) a section 1983 civil conspiracy claim against all defendants; (9) a section 1983 non-supervisory failure to intervene claim against Officer Potope and John Doe officers 1-10; (10) a section 1983 wrongful death claim against all defendants; (11) a section 1983 survival action against all defendants; and (12) a loss of consortium claim against all defendants.

The Palmer defendants' motion to dismiss seeks dismissal of all counts against the Palmer Township Board of Supervisors Mr. Colver, Mr. Lammi, Mr. Mitchell, Ann-Marie Panella, and Mr. Smith and dismissal of count I, count II, count III, count VI, count VII, count VIII, and count XII. The Wilson defendants' motion to dismiss seeks dismissal of count I, count II, count III, count VI, count VII, count VIII, count IX, and count XII.

## II. STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the

complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim.  Conley, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)).  The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

Fowler, 578 F.3d at 210, provides a two-part test to determine whether a claim survives a motion to dismiss.  "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true,

but may disregard any legal conclusions." Id. at 210-11 (quoting Iqbal, 129 S.Ct. at 1949). "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1950). The plaintiff must show "the allegations of his or her complaints are plausible." Fowler, 578 F.3d at 211 (quoting Phillips, 515 F.3d at 234-35). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1949). This "'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1949).

## III.  DISCUSSION

### A.  Count I – Violation of § 1983

The Wilson Borough defendants allege count I of Mr. LaBar's complaint should be dismissed because 42 U.S.C. § 1983 does not establish an independent cause of action.[5]

Count I of the complaint incorporates the proceeding paragraphs and states

---

[5] Memorandum of Law in Support of Defendants Borough of Wilson, Chief Richard Nace, Mayor David Purusso, Karen Lohrman, Officer Michael Potope, and John Does 1-20's Motion to Partially Dismiss at 5, LaBar v. Alercia, No. 09-4182 (E.D. Pa. filed May 7, 2010).

"[w]hile acting under the color of [s]tate [l]aw, the defendants deprived [p]laintiff's deceased wife of various Federal and Constitutional Rights." Complaint at ¶ 77. The count does not delineate the specific federal or constitutional right violated.

I will grant the Wilson defendants' motion to dismiss count I. Although the Palmer defendants did not raise this argument, count I also will be dismissed as to the Palmer defendants because it does not specify the constitutional right violated.

### B.     Count II – Fourth Amendment and Fourteenth Amendment

Count II alleges the officers' conduct "was willful, reckless, grossly negligent, deliberately indifferent to the life and safety of [Mr. LaBar's] deceased wife and/or shocking to the conscience." Complaint at ¶ 80. The complaint alleges the conduct violated the Fourth and Fourteenth Amendments to the United States Constitution and Mr. LaBar's wife's "right to personal security, to life and liberty, and to be free from arbitrary government action which demonstrates a deliberate indifference to [her] life and which shocks the conscience." It alleges Mr. LaBar's wife was injured as a result of the conduct.

The Palmer defendants and Wilson defendants challenge this count on two grounds: (1) no seizure occurred pursuant to the Fourth Amendment and (2) Mr. LaBar failed to state a claim pursuant to the Fourteenth Amendment.

1. <u>Fourth Amendment</u>

The Fourth Amendment only applies to searches and seizures. "A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement. A seizure occurs even when an unintended person is the object of detention, so long as the means of detention are intentionally applied to that person." <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 269 (3d Cir. 2000) (citing <u>Brower v. Cnty. of Inyo</u>, 489 U.S. 593, 596 (1989)). "[I]f a police officer fires his gun at a fleeing robbery suspect and the bullet inadvertently strikes an innocent bystander, there has been no Fourth Amendment seizure." <u>Id.</u> If, however, "the officer fires his gun directly at the innocent bystander in the mistaken belief that the bystander is the robber, then a Fourth Amendment seizure has occurred." <u>Id.</u>

Mr. LaBar's wife was not "detained by means intentionally applied to terminate [her] freedom of movement." <u>See</u> <u>Berg</u>, 219 F.3d at 269. Therefore, she was not seized under the Fourth Amendment and Mr. LaBar cannot state a § 1983 claim based on the Fourth Amendment.


2. <u>Fourteenth Amendment</u>

The Fourteenth Amendment due process clause protects "individuals against arbitrary action of the government." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974). For executive action to violate the Fourteenth Amendment, the abuse of power must "shock[]

the conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). "Deliberate

indifference that shocks in one environment may not be so patently egregious in another,

and [the Court's] concern with preserving the constitutional proportions of substantive

due process demands an exact analysis of circumstances before any abuse of power is

condemned as conscience shocking." Id. at 851.

As the term "'deliberate indifference' implies, the standard is sensibly employed

only when actual deliberation is practical." Lewis, 523 U.S. at 851. Therefore, the

Supreme Court has held a higher standard of fault applies to a high-speed chase. "[H]igh-

speed chases with no intent to harm suspects physically or worsen their legal plight do not

give rise to liability under the Fourteenth Amendment." Id. at 854. This higher standard

applies because police must "act decisively and . . . show restraint at the same moment,

and their decisions have to be made 'in haste, under pressure, and frequently without the

luxury of a second chance.'" Id. at 853 (quoting Whitley v. Albers, 475 U.S. 312, 320

(1986). "A police officer deciding whether to give chase must balance on one hand the

need to stop a suspect and show that flight from the law is no way to freedom, and, on the

other, the high-speed threat to all those within stopping range, be they suspects, their

passengers, other drivers, or bystanders." Id.

Mr. LaBar maintains he states a Due Process violation because the police intended

to cause harm and to worsen Mr. Messinger's legal plight. He attempts to distinguish

Lewis and Davis v. Twp. of Hillside, 190 F.3d 167 (3d Cir. 1999), because the harm to

Mrs. LaBar was a foreseeable consequence of the police action. Mr. Lewis also argues the chase was no longer in furtherance of a legitimate government interest.

a)    <u>Intent to Cause Harm or Worsen Legal Plight</u>

Mr. LaBar argues the officers acted with intent to cause harm unrelated to the legitimate object of arrest when they established a road block. Mr. LaBar maintains blocking the exit, which forced Mr. Messinger to continue on the wrong way on a highway, demonstrated an intent to harm. In addition, Mr. LaBar maintains the road block was intended to worsen Mr. Messinger's legal plight. It forced Mr. Messinger back on the road, and, if Mr. Messinger continued his flight in the wrong direction, a collision was a natural consequence. When the collision occurred, Mr. Messinger would face additional charges.

Mr. LaBar attempts to distinguish <u>Lewis</u> and <u>Davis</u>. He argues, unlike the accidents in <u>Lewis</u> and <u>Davis</u>, the harm to Mrs. LaBar was a "natural, certain, or foreseeable consequence." In <u>Lewis</u>, a passenger was thrown from the chased motorcycle when the motorcycle made a turn. The Court noted the officers "had done nothing to cause Willard's high-speed driving in the first place . . . and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speeds." <u>Lewis</u>, 523 U.S. at 855.

In <u>Davis</u>, Dwayne Cook was driving a stolen car in a residential neighborhood.

190 F. 3d at 169.  Officers in two patrol cars "observed the [car] stopped in a traffic lane at a stop sign for what the officers considered an unusually long time."  Id.  The officers noted damage to the car, and decided to investigate.  Id.  The car sped away, and the police followed.  Id.  One of the police cars bumped Mr. Cook's car.  Mr. Cook hit his head on the steering wheel and passed out.  He lost control of the car and collided with two other cars.  One of the cars with which he collided hit the plaintiff, who had been standing on the sidewalk.

In Davis the Third Circuit held the police officers' actions did not shock the conscience.  190 F.3d at 171.  The court reasoned:

> [T]he officers were faced with lawless behavior–the flight from their investigation–for which they were not to blame. They had done nothing to cause Cook's high-speed driving or his flouting of their law-enforcement authority.  Cook's action was instantaneous and so, by necessity, was the officers' response. Their intent was to do their job as law enforcement officers, not to cause injury. If they acted recklessly or imprudently, there is no evidence that their actions 'were tainted by an improper or malicious motive.'

Id.  The court in Davis noted "physical contact of some sort between the pursued and pursuing vehicles . . . in the course of a high-speed chase, particularly at its conclusion, is foreseeable."  Id.

As in Lewis and Davis, the police did not cause Mr. Messinger's high speed driving, and their reaction was instantaneous.  Their intent was to stop Mr. Messinger, not to do harm or to worsen Mr. Messinger's legal plight.

11

b)     Not in Furtherance of a Legitimate Government Interest

In <u>Davis</u>, the Court of Appeals for the Third Circuit stated "conduct intended to injure in some way unjustifiable by any government interest . . . is the sort of official action most likely to rise to the conscience-shocking level."  <u>Davis</u>, 190 F.3d at 171.

Mr. LaBar argues the government did not have a legitimate government objective for blocking the exit ramp.  Their legitimate objective of arresting Mr. Messinger could have been accomplished if Mr. Messinger exited the highway.  In addition, he argues the police were not acting in service of a legitimate government interest because the threat of harm to innocent motorists far outweighed the value of apprehending Mr. Messinger.

The police had a legitimate interest, i.e., apprehending Mr. Messinger.   Their actions were in furtherance of this legitimate government interest.

I will grant defendants' motions to dismiss count II.


C.     Count III – Claims Against Supervisors In Their Individual Capacities

Mr. LaBar raises § 1983 supervisory liability claims against Police Chief Fretz of Palmer Township and against Chief Nace and Mayor Purusso of Wilson Borough.  He also alleges supervisory liability claims against Mr. Colver, Mr. Lammi, Mr. Mitchell, Ms. Panella, and Mr. Smith, who constitute the Palmer Township Board of Supervisors.[6]

Mr. LaBar alleges the supervisory defendants "either directed conduct which

_____

[6] Mr. LaBar alleges the board of supervisors are appropriate defendants because they had final authority to establish a high-speed pursuit policy.

12

resulted in the violation of the Plaintiff's deceased wife's Federal Rights as alleged, or

had actual knowledge of the subordinates' violation of Plaintiff's deceased wife's rights

and acquiesced in said violations, or, with deliberate indifference to the consequences,

established and maintained a policy, practice or custom which directly caused the

violation of Plaintiff's deceased wife's rights, or had a policy of maintaining no policy or

regulations where same were clearly needed."  Complaint at ¶ 85.

A plaintiff can sue a defendant in a personal capacity action under two theories of

supervisory liability.  See A.M. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 578 (3d

Cir. 2004); accord Hill v. City of Phila., 2008 WL 2622907, at *5 (E.D. Pa. June 30,

2008).  First, a plaintiff can establish supervisory liability if he shows the defendants

"with deliberate indifference to the consequences, established and maintained a policy,

practice, or custom which directly caused [the] constitutional harm."  A.M. Luzerne Cnty.

Juvenile Det. Ctr., 372 F.3d at 586 (quoting Stoneking v. Bradford Area Sch. Dist., 882

F.2d 720, 725 (3d Cir. 1989)).  Second, a plaintiff can establish supervisory liability if he

shows a supervisor "participated in violating the plaintiff's rights, directed others to

violate them, or, as the person in charge, had knowledge of and acquiesced in his

subordinates' violations."  Id. (quoting Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d

Cir. 1995)).

Mr. LaBar fails to sufficiently allege a constitutional harm.  See supra Part III.B.

Therefore, he cannot establish a policy or practice directly caused a constitutional harm or

that the supervisor had knowledge of and acquiesced in a violation. Moreover, Mr. LaBar

fails to allege how the policy was deficient and fails to allege sufficient facts to establish

deliberate indifference on the part of the supervisory defendants. The motions to dismiss

Count III will be granted.


        D.      <u>Claims Against the Board of Supervisors in Their Official Capacity</u>

The Palmer defendants argue the official capacity suit against Mr. Fretz, Mr.

Lammi, Mr. Mitchell, Ms. Panella, and Mr. Smith should be dismissed because it

adequately is addressed by the claim against the municipality.

A claim against a defendant in his or her individual capacity seeks to "impose

personal liability upon a government official for the action he takes under color of state

law," and can recover only against the defendant's personal assets. <u>Kentucky v. Graham</u>,

473 U.S. 159, 165-66 (1983). "[O]fficial capacity suits alleges that the government

entity's 'policy or custom' played a part in the violation of federal law with which the

individual defendant is charged," and "generally represents only another way of pleading

an action against an entity of which an officer is an agent." <u>Id.</u> The government's assets

are available in a suit against an official in his or her official capacity. <u>Id.</u>

In <u>Verde v. City of Phila.</u>, 862 F. Supp. 1329, 1336-37 (E.D. Pa. 1994), the United

States District Court for the Eastern District of Pennsylvania dismissed counts against

defendants in their official capacity because a suit against an official in his or her official

capacity is another way of pleading an action against an entity. Similarly, in <u>Doby v. Decrescenzo</u>, 1996 WL 510095, at *27 (E.D. Pa. Sept. 9, 1996), the United States District Court for the Eastern District of Pennsylvania dismissed the official capacity claims because official capacity suits are "simply another method of pleading an action against the entity which employs the official."

Although Mr. LaBar acknowledges courts have dismissed official capacity suits where the plaintiff also alleges a claim against the government entity, he argues dismissal is not required. In <u>Crighton v. Schuylkill County.</u>, 822 F. Supp. 411, 415 (E.D. Pa. 1995), the court found that although <u>Brandon v. Holt</u>, 469 U.S. 464 (1985), held official capacity suits impose liability on the entities the officials represent, "<u>Brandon</u> does not direct a district court to dismiss claims against defendants sued in their official capacities when a government entity is also named." The court, therefore, did not dismiss the official capacity suits.

I will dismiss the claims against the board of supervisors in their official capacity as duplicative of the claims against the Township of Palmer.

### E.      Count VI – State Constitutional Claims

Mr. LaBar alleges the Palmer defendants' and Wilson defendants' actions deprived Mrs. LaBar of her rights in violation of Article I, Section 1, Article I, Section 8, and Article I, Section 26 of the Pennsylvania Constitution. <u>See</u> Complaint at ¶ 24. At oral

argument, he conceded this claim failed as a matter of law.[7]  Therefore, the defendants'

motions to dismiss count VI will be granted.[8]


      F.     <u>Count VII – Assault and Battery</u>

Count VII alleges "[Officer] Alercia assaulted and battered [Mr. LaBar's]

deceased wife."  Complaint at § 106.[9]

"Assault is an intentional attempt by force to do an injury to the person of another,

and a battery is committed whenever the violence menaced in an assault is actually done,

though in ever so small a degree, upon the person."  <u>Renk v. City of Pittsburgh</u>, 641 A.2d

289, 293 (Pa. 1994).

---

[7] In <u>Jones v. City of Phila.</u>, 890  A.2d 1188, 1216 (Pa. Commw. Ct. 2006), the
Pennsylvania Commonwealth Court held "there is no separate cause of action for monetary
damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania
Constitution."  <u>Accord</u> <u>Hall v. Raech</u>, 2009 WL 811503, at *6 (E.D. Pa. Mar. 25, 2009)
(adopting the reasoning of <u>Jones</u> and finding no private cause of action exists for Article 1,
Section 8).   The district court cases decided after Jones have determined the reasoning in Jones
also would bar a cause of action for money damages pursuant to Article I, Section 1.  <u>See, e.g.</u>,
<u>Lopez v. Maczko</u>, 2007 WL 2461709, at *6 (E.D. Pa. Aug. 16, 2007) (applying the Jones
decision to Article 1, Section 1); <u>K.S. v. Sch. Dist. of Phila.</u>, 2007 WL 1009815, at *7 (E.D. Pa.
filed Mar. 28, 2007) (same).

[8] Mr. LaBar can state a claim for injunctive and declaratory relief under the
Pennsylvania Constitution.  <u>See</u> <u>Hall</u>, 2009 WL 811503, at * 6 n.13 (noting a plaintiff can pursue
injunctive and declaratory relief under the Pennsylvania Constitution); <u>Jones</u>, 890 A.2d at 1212
n.37 (noting the plaintiff could "pursue injunctive/declaratory relief against the City under the
State Constitution").  The defendants, however, argue Mr. LaBar lacks standing to raise his
claims for injunctive and declaratory relief.  The defendants' argument is discussed in a later
section.  <u>See</u> <u>infra</u> Part III.K.

[9] Although the claim's caption references Officer Alercia, Officer Border, Officer Vogel,
Office Potope, and John Does 1-10, the body of the claim mentioned only Officer Alercia.

Both the Palmer defendants and the Wilson defendants argue Mr. LaBar's assault and battery claim should be dismissed. The Wilson defendants argue the allegations supporting the assault and battery claim refer only to Defendant Alercia's actions. <u>See</u> Wilson Defendant's Memorandum at 11. It maintains the complaint does not mention contact between a defendant or a defendant's vehicle and Mrs. LaBar. Similarly, the Palmer defendants maintain the complaint fails to state an assault and battery claim because no police vehicle was involved in the collision.

Mr. LaBar argues the defendants are liable under the theory of transferred intent, but provides no citations or case law to support the doctrine's applicability. As a practical matter, "transferred intent" is a doctrine used to establish intent where one person intends to harm another and a third party is in fact harmed. In this case, there was no intent to harm Mr. Messinger so there was no intent to "transfer" to Mrs. LaBar.

I will grant the motions to dismiss the assault and battery claims because the complaint fails to sufficiently allege the defendants intended to harm Mrs. LaBar.


G.      <u>Count VIII – Civil Conspiracy</u>

Count VIII alleges the "[d]efendants conspired to engage in conduct alleged heretofore, whereby each [d]efendant acted in concert, pursuant to an agreement, to cause the stated harms or in some way facilitated the conspiratorial objective of inflicting the resulting harms upon the [p]laintiffs by their own acts or omissions or by those of fellow

17

co-conspirators."  Complaint at ¶ 109.

"To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence

of a conspiracy involving state action; and (2) a depravation of civil rights in furtherance

of the conspiracy by a party to the conspiracy."  Marchese v. Umstead, 110 F. Supp. 2d

361, 371 (E.D. Pa. 2000).

I will grant the motions to dismiss the conspiracy claim because Mr. LaBar is

unable to establish there was a depravation of Mrs. LaBar's constitutional rights.  See

supra Part III.B (dismissing § 1983 claims based on the Fourth and Fourteenth

Amendment).


H.      Count IX – Failure to Intervene

The Wilson defendants seek dismissal of Mr. LaBar's claim that Officer Potope

and John Does 1-10 failed to intervene to prevent co-defendants from violating Mrs.

LaBar's constitutional rights.

"If a police officer, whether supervisory or not, fails or refuses to intervene when a

constitutional violation such as an unprovoked beating takes place in his presence, the

officer is directly liable under Section 1983."  Smith v. Mensinger, 293 F.3d 641, 650 (3d

Cir. 2002) (quoting Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986)).  No

constitutional violation occurred.  See supra Part III.B (dismissing § 1983 claims based

on the Fourth and Fourteenth Amendment).  Therefore, Mr. LaBar fails to state a failure

to intervene claim and the Wilson defendants' motion to dismiss count IX will be granted.


I.      Count XII – Loss of Consortium

At oral argument, Mr. LaBar conceded he failed to state a claim for loss of

consortium. Therefore, the motions to dismiss count XII will be granted.


J.      Punitive Damages

Punitive damages may not be awarded against municipalities under § 1983. City

of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Similarly, punitive damages

may not be awarded against an officer in his or her official capacity. Gretory v. Chehi,

843 F.2d 111, 120 (3d Cir. 1988).

Because there are no claims remaining against the individual defendants, I will

grant defendants' motions to dismiss the punitive damages claim.


K.      Declaratory and Injunctive Relief

"Article III of the Constitution limits the federal judicial power to 'Cases' or

'Controversies.'" Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 193 (3d Cir. 2004)

(quoting United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.,

517 U.S. 544, 551 (1996)). "Courts enforce the case-or-controversy requirement through

the several justiciability doctrines," including "standing, ripeness, mootness, the political-

question doctrine, and the prohibition on advisory opinions." Toll Bros., Inc. v. Twp. of Redington, 555 F.3d 131, 137 (3d Cir. 2009) (citations omitted). Standing ensures "plaintiffs have a 'personal stake' or 'interest' in the outcome of the proceedings, 'sufficient to warrant . . . [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on . . . [their] behalf.'" Khodara Envtl., Inc., 376 F.3d at 193 (quoting Joint Stock Soc'y v. UDV N. Am., Inc, 266 F.3d 164, 175 (3d Cir. 2001)) (alterations in original).

Standing ensures "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." Summers v. Earth Island Inst., 129 S.Ct. 1142, 1149 (U.S. 2009) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 221 (1974)). To establish standing under Article III of the Constitution, a plaintiff seeking injunctive relief must demonstrate the following three elements: (1) he "suffered a 'concrete,' 'particularized' injury-in-fact, which must be 'actual or imminent, not conjectural or hypothetical;'" (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "a favorable decision likely would redress the injury." Toll Bros. Inc., 555 F.3d at 137-38 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat

that the plaintiff will be wronged again–a 'likelihood of substantial and immediate irreparable injury.'" City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 502 (1974)).  A plaintiff lacks standing to raise a claim for injunctive relief where he is unable to show "a sufficient likelihood that he will again be wronged in a similar way." Lyons, 461 U.S. at 111.  Without this showing the plaintiff "is no more entitled to an injunction than any other citizen . . . ; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." Id.  Unless the requirements of Article III standing are met, "[a] federal court is not the proper forum to press such claims." Id. The Supreme Court has held "recognition of the need for a proper balance between state and federal authority counsel restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." Lyons, 461 U.S. at 112.  "[W]ithholding injunctive relief does not mean that the 'federal law will exercise no deterrent effect in these circumstances.'  If [the plaintiff] has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983." Id. at 112-13.

I find Mr. LaBar lacks standing to raise his injunctive and declaratory relief claims because he is unable to establish a sufficient likelihood that the another police chase will occur and that he will be harmed as a result of the chase.  Even if Mr. LaBar would somehow establish standing to bring an action for injunctive relief, he has failed to make

any showing on at least two basic elements for injunctive relief. He has failed to establish irreparable injury would result if no injunction issues and he, at least in theory, has an adequate remedy at law in an action for damages under § 1983.

**IV.    Conclusion**

I will grant the defendants' motions to dismiss count I, count II, count III, count IV, count VII, count VIII, count IX, and count XII, and the motions to dismiss the plaintiff's requests for punitive damages and declaratory and injunctive relief.

An appropriate order follows.